**UNITED STATE DISTRICT COURT**
**EASTERN DISTRICT: NEW YORK**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 22 2020 ★

LONG ISLAND OFFICE

DIGIROLOMO & DIGIROLOMO, P.C., DIGIROLOMO &
ASSOCIATES, P.C., and ALFRED DIGIROLOMO JR., both
individually and professionally,

JURY TRIAL DEMANDED
Docket No.:

Plaintiffs

-against-

**COMPLAINT**

LEONARD OLIVA, ELVA OLIVA, TWENTY–SEVEN
RESTAURANT, LLC, RONALD DIGIROLOMO, JOSEPH
DIGIROLOMO, LARRY BLUMSTEIN, JEFFREY B.
HULSE, ESQ.  VICTOR MEVORAH, ESQ.
JOHN DOE, JANE DOE, and XYZ CORPORATION, the last three
defendants being fictitious, the true names and capacities,
whether individual, corporate, associate or otherwise,,
being unknown to the plaintiffs, it being intended to
designate those persons or entities that are in some
manner legally responsible for the occurrence herein
alleged or persons or parties having or claiming an
interest in or lien upon plaintiffs' property described
in this complaint.

RECEIVED

SEP 23 2020

EDNY PRO SE OFFICE

CV-20 4485

AZRACK, J.

SHIELDS, M.J.

Defendants.

—————————————————————————X

**Introductory Statement and Nature of the Action**

PLAINTIFFS, DIGIROLOMO & DIGIROLOMO, P.C., DIGIROLOMO &

ASSOCIATES, P.C., and ALFRED DIGIROLOMO JR., individually and as owner of the

corporations in his professional capacity as the owner, "PLAINTIFF" by and through

its owner alleges and states as follows:

Plaintiffs allege that Defendants, LEONARD OLIVA, ELVA OLIVIA,

VICTOR MEVORAH, ESQ., JEFFRY B. HULSE, ESQ. and other defendants

engaged in a racketeering scheme designed to defraud Plaintiffs of tens of

thousands of dollars by  failing to make payment for outstanding legal services

over eight years, knowing the purported scheme was deceptive, bogus,

mendacious, and, dishonest.  Furthermore, Jeffrey B. Hulse was an adversary

1

representing Peoples Bank against Joseph DiGirolomo and Leonard Oliva.   I represented Joseph DiGirolomo and Mr. Mevorah represented Mr. Oliva. Plaintiffs allege that all Defendants, LEONARD OLIVA, ELVA OLIVA, RONALD DIGIROLOMO, JOSEPH DIGIROLOMO, LARRY BLUSTEIN, JEFREY B. HULSE, ESQ. VICTOR MEVORAH, ESQ. engaged in breach of contract, theft of services, unjust enrichment, fraudulent inducement, constructive fraud, quantum meruit and  dishonest behavior by suborning perjury.

## **PARTIES**

1.  PLAINTIFF, DIGIROLOMO & DIGIROLOMO, P.C., was at all times relevant herein, a professional corporation, having at a time then and there an office in Nassau County, practicing law and organized and existing under the laws of the State of New York.

2.  PLAINTIFF, DIGIROLOMO & ASSOCIATES, P.C., was at all times relevant herein, a professional corporation, having at a time then and there an office in Nassau County, practicing law and organized and existing under the laws of the State of New York.

3.  PLAINTIFF, ALFRED DIGIROLOMO JR., at all times relevant to the allegations set forth in this complaint, was and still is a resident of the County of Nassau, State of New York

4.  Upon information and belief, DEFENDANT, ELVA OLIVA, is and was at all times herein after mentioned, a resident of the County of Nassau and the State of New York.

5. Upon information and belief, DEFENDANT, LEONARD OLIVA, is and was at all times herein after mentioned, a resident of the County of Nassau, and the State of New York.

6. Upon information and belief, DEFENDANT, TWENTY SEVEN RESTAURANT, LLC., was and still is a domestic corporation duly organized under the laws of the State of New York doing business in the County of Nassau, located at 5074 Sunrise Highway, Massapequa, New York.

7. Upon information and belief, DEFENDANT, RONALD DIGIROLOMO, is and was at all times herein after mentioned, a resident of the County of Nassau, State of New York.

8. Upon information and belief, DEFENDANT, JOSEPH DIGIROLOMO is and was at all times herein after mentioned, a resident of the County of Suffolk, and State of New York.

9. Upon information and belief, DEFENDANT, LARRY BLUMSTEIN, is and was at all times herein after mentioned, a resident of the County of Nassau, State of New York.

10. Upon information and belief, DEFENDANT, JEFFERY B. HULSE, is and was at all times herein after mentioned, an attorney and a resident of the County of Suffolk, State of New York, licensed to practice law before the Courts of the State of New York

11. Upon information and belief, DEFENDANT, VICTOR MEVORAH, is and was at all times herein after mentioned, an attorney and a resident of the County of Nassau, State of New York, licensed to practice law before the Courts of the State of New York.

12.    Upon information and belief, DEFENDANTS< JOHN DOE JANE DOE and XYZ CORP. are (were) in some way legally responsible for damages sustained by Plaintiffs.

**BRIEF HISTORY**

13.    In or about February 2008, the four members, Ronald DiGirolomo, equitable member, Joseph DiGirolomo, legal member, Larry Blumstein, equitable member, and Leonard Oliva, legal member, owners of three LLC's doing business as three restaurants known as "CIAO BABY" met in my office to discuss a serious sales tax issue involving a New York State Department of Tax and Finance sales tax audit involving a three and one half year time period in which the State claimed the members owed a sum of approximately $3.3 million dollars in sales tax which the State claimed the members stole for their personal use for their benefit, (inclusive of interest and penalties).

14.    Despite 14 months of audit meetings with the STATE, its supervisor, an expert retained by the members, (a Certified Public Accountant firm from Manhattan), the submission of thousands of documents, and meetings with their CPA advisor; the state audit supervisor and sales tax audit team, where at an impasse.  Defendant, Joseph DiGirolomo, knew my firm had used in the past a tax forensic expert, Jay Gart, for several of its cases with clients who experienced tax audit disputes with the New York State Department of Tax and Finance.

15.    It was undeniable, the State could shut the restaurant down, sell it and use proceeds to pay debt; could take over the restaurant and continue

to run it under its own supervision; or just walk the case across the hall to the CRIMINAL INTELLIGENCE DIVISION for criminal prosecution imposition of fines and jail time. Thus, at this meeting both my firm and Jay Gart were retained. One thing was certain, that under no circumstances should they lose the restaurant and that a payment plan was their best option. The discussions focused on serious financial issues, retaining Jay Gart as soon as possible to litigate this extremely dangerous situation that would close their business; impose financial liability on each member; and subject each to possible criminal liability and jail. Jay Gart was retained as was my firm (retainers were signed by both Joseph DiGirolomo and Leonard Oliva) as Ronald DiGirolomo and Larry Blumstein, as equitable partners (both had criminal convictions, which was unreported to the State Liquor Authority)

16.    Following the next several months thousands of documents were organized, collated and reviewed by both Jay Gart and my office; discussions with the members ensued; meetings with the members took place; all for the purpose of establishing legal defenses and preparation of and filing of a request for review with the State Bureau of Conciliation and Mediation. During this time, an offer and compromise was rejected by the State; a payment plan was rejected by the State and eventually, the tax liability made its way to Mr. Charcko, of the Collection and Civil Enforcement division of the State Department of Tax and Finance located in Kew Gardens Queens New York. The warrants were issued and served demanding payment of approximately $3.3miliion dollars.

17.    Under the threat of closing the businesses in 72 hours as per Mr. Charcko, who served warrants and demanded full payment, (in excess of $3.2mil. it was agreed the only way to protect the businesses was to file for bankruptcy. The next day I introduced Harold S. Berzow, a bankruptcy attorney with Ruskin. Moscou & Faltischek, to the members knowing I used

5

Harold with other clients before. The members were advised the closing and seizing of the business by the State would not cease the collection and enforcement efforts of the unsatisfied collection which would expose each member to criminal prosecution by Criminal Intelligence Division (CID) arm of the State.

18.   After several meetings, review of documents, telephone conversations with Harold and Mike Amato, associate attorney with Harold. the petition for bankruptcy was filed and the NYS Tax and Finance Department was now closed out.  By operation of law, the case was transferred to the New York State Attorney Generals' (Eliot Spitzer) office for collection.

19.   After dozens of hours of review of all tax documents, corporate documents, sales receipts, expense ledgers and other documents between my office and Jay Gart, my office scheduled a meeting with Neal Mann, supervisor attorney of the tax department at the NYS Attorney Generals office headed by Eliot Spitzer.   At the first meeting which lasted approximately six hours, Mr. Mann made it crystal clear, that any resolution of this matter had to be approved by Albany which in and of itself presented serious problems given the preconceived notions of liability already litigated at the audit level.  .

20.   Thereafter, over a period of six months, two additional meetings followed with Neal Mann. Throughout these meetings and during three way conference calls/conversations with Jay Gart, I continuously cautioned Jay to avoid any mention of Larry Blumstein and Ronald DiGirolomo given their criminal history so as avoid disclosure of that information.   At the last meeting with Neal Mann, I advanced legal arguments as to the financial stability of any restaurant, insisting the restaurant needed time to recoup

its expenditures and left the arduous and in-depth analysis of the data and accounting to the expertise of Jay Gart.   The case settled for a sum of $110,000.00 with simple 3% interest payable over 5 years but if the debt was paid within one year of the agreement, the debt would be satisfied in full for a payment of only $100,000.00.   Eventually, this settlement was approved by the bankruptcy Court as well as the discharge of hundreds of thousands of dollars owed to approximately twenty-four (24) vendors.   This case and this firms hours logged consisted of approximately 272 hours at $350 per hour.   The restaurants were spared and allowed to continue full operation and ownership under the leadership of the original owners

21.   Thereafter, additional criminal tax issues surfaced but this involved payroll taxes (approx. $400,000.00) the members used to support the build out of a third CIAO BABY restaurant in Carle Place which subsequently closed and was turned into a night club with a cabaret license. Once again, the criminal consequences of using payroll taxes for personal use (in this case to fund the build out of the third restaurant) exposed each member to possible criminal prosecution and or jail.   Once again, with the efforts and assistance of my firm and Jay Gart, the payroll tax exposure was limited to a collection matter without criminal prosecution.   This process consisted of 72 hours logged and billed.

22.   During this time frame, the Bureau of Conciliation and Mediation had rejected our request for review and this necessitated an appeal to the NYS Division of Tax Appeals to which this firm prepared and filed a petition for review and redetermination which eventually, Hon. Judge Joseph W. Pinto, Jr. denied.   This case from its inception to a final resolution consisted of 48 hours logged and billed.

**FACTUAL BACKGROUND RETAINER AGREEMENT**

23.   The controversy given rise to this action revolves around retention via a retainer agreement dated February 15, 2008 of the plaintiffs signed by the defendants, JOSEPH DIGIROLOMO, and LEONARD OLIVA at the law offices of the plaintiffs, located in Nassau County, to represent, prosecute and defend corporate entities, its officers and shareholders against lawsuits, criminal investigations and protect their assets therein. Ciao Baby Restaurants including their members, officers, equitable partners which included Ronald DiGirolomo, and Larry Blumstein, and officers defendant, Leonard Oliva and defendant, Joseph DiGirolomo, all equal members (25%) stakeholders in each of the three Ciao Baby restaurants became very popular on Long Island. The retainer agreements contained an attorney hourly rate of $350.00 which the defendants could not pay as billed.

24.   The most the four defendants (CIAO BABY owners) could pay was $250.00 a week regardless of what the bill was. The firm accepted this arrangement with the understanding that during the course of our continued representation we would be paid in full when additional financing or additional investing of capital was forthcoming.

25.   The three corporations were known as JJM-63, d/b/a Ciao Baby restaurant located in **Commack**, New York. The second was RJLL, LLC, d/b/a Ciao Baby Restaurant, located in **Massapequa**, New York, and the third was DDOB, LLC d/b/a Ciao Baby Restaurant located in **Carle Place**, New York.

26.   To emphasize that the parties were each 25% owners of each LLC., **Massapequa** restaurant was organized under the corporation known as RJLL, LLC., a/k/a RONALD, JOSEPH, LARRY and LEONARD, LLC. The **Carle Place** restaurant organized under DDOB, a/k/a DIGIROLOMO, DIGIROLOMO, OLIVA and BLUMSTEIN. The Corporate organization

reflected the equal 25% interests of each member.   The New York State Liquor Authority WAS

27.   Between the years of 2008 and the present time, two restaurants, **Commack** and **Massapequa** were subject to a sale through a transfer of assets and the satisfaction of all liabilities imposed upon the corporations and the individuals of each corporate entity. * [1]All liabilities were to be paid in full and satisfied including but not limited to monies owed to DiGirolomo & DiGirolomo, P.C., DiGirolomo & Associates, P.C., Internal Revenue Services, Bank of Smithtown, the New York State Department of Tax and Finance, law firms and others.

28.   The outstanding liabilities that were never satisfied with the respect to the transfer of all assets regarding the restaurant in **Massapequa** which includes but is not limited to DiGirolomo & DiGirolomo. P.C., DiGirolomo & Associates, P.C. in excess of $300,000.00) the law firm of Karen Tenenbaum is owed in excess of $3,000 dollars, the law firm of Ruskin, Moscuu & Faltischek is owed an excess of, $15,000 dollars and various individuals who invested monies into the build out of the Carle Place restaurant which remain unpaid.

29.   As previously stated, the defendants approached plaintiffs over a tax dispute with the New York State Department of Tax and Finance regarding collected but unpaid sales taxes of approximately $3.3 million dollars.  The State conducted a field audit observation on a Friday night from 6:00pm through 10:00pm, four (4) hours and made a determination that for three (3

---

[1] Commack was transferred pursuant to a contract of sale given the new owner (Leonard Oliva) the right to assume all assets (with only a license to use the trade name "CIAO BABY" at the premises of the Commack location only, with satisfaction of all  liabilities.

½ ) years the defendants had underreported there gross sales resulting in a final sales tax audit in which it was claimed that approximately $3.3 million dollars was owed.  The work performed by the plaintiffs included but is not limited to the following itemized list of cases, both prosecution and defense in State Courts and Federal Courts and various other issues including but not limited to representation before Attorney General Eliot Spitzer, New York County District Attorney, Internal Revenue Service, New York State Department of Tax and Finance, New York State Workers Compensation Board,  U.S. Department of Labor, and Contracts of Sale Agreements/Real Estate transactions for 15 Bethel Lane, Commack, New York, criminal prosecutions in District Court of Suffolk County.  To date, the plaintiffs have been paid a total of approximately $59,500.00 over an eight year period inclusive of several $250.00 dollar checks that bounced and were never replaced.  Never paid as well are the litigation costs associated with filings of summons and complaints, motion practice, depositions, office expenses including but not limited to postage, copying, and telephone usage. By way of example is a brief list of matters over the eight year period handled by the plaintiffs for which there are two dozen red-wells containing the documents.

**DIGIROLOMO & DIGIROLOMO, P.C., and DIGIROLOMO & ASSOCIATES, P.C., PARTIAL WORK HISTORY AS LAW FIRMS FOR THE FOUR MEMBERS OF THE THREE CORPORATE ENTITIES KNOWN AS JJM-63, LLC, RJLL, LLC, and DDOB, LLC.**

13. Nassau Supreme Court - Majestic Meats, Inc. v. RJLL Corporation (Ciao Baby) - Index No.: 17332/2009
   a. Defendant Answer to 08-07-09 Summons & Complaint: 10-30-09
   b. Notice for Discovery & Inspection 11-05-09:
   c. Notice of Cross Motion 11-15-10

    d. Notice to Take Deposition Upon Oral Examination 11-4-09

    e. Letter to Defendant 03-11-10

    f. Facsimile to DEFENDANT 11-15-10

    g. Court Appearance: 11-19-10.

    h. Court Appearance: 01-6-11. Nassau Supreme (Supreme Initial) - before Hon. Judge Marber. "Stayed"

    i. Court Appearance: 01-20-11. Nassau Supreme (Motion) - before Hon. Judge Marber. Withdrawn.

    j. Court Appearance: 02-4-14. Nassau Supreme (Supreme Trial) - before Hon. Judge Marber. Remove Stay.

    k. Court Appearance: 02-5-14. Nassau Supreme (Final) - before Hon. Judge Marber. Settled

14. Nassau Supreme Court - Cow Palace v. RJLL Corp. (Ciao Baby) - Index No.: 010649/2009

    a. Defendant Verified Answer to 06-03-09 Summons & Complaint: 06-18-09

    b. Court Appearance for Preliminary Conference: 08-05-09

    c. Depositions held 10-18-09

    d. Notice to Take Deposition Upon Oral Examination 06-18-19

    e. Letter to Defendant 09-02-09

    f. Facsimile to DEFENDANT 10-27-09

    g. Stipulation of Settlement August 2009

    h. Stipulation of Discontinuing Action: 9-15-10

    i. Court Appearance: 10-27-09. Nassau Supreme (Supreme Trial) - before Hon. R. BRUCE COZZENS JR. Pre-Note Settlement

15. Suffolk Supreme Court - JJM-63 Restaurant, Inc. v. Arlona limited partnership et. al - Index.: 73310/2009

    a. Summons and Complaint filed 09-16-10.

    b. Chapter 11 filed by Plaintiff 11-16-10

    c.  Certified Letter to Defendant - 05-11-10

    d.  Certified letter to Defendant and Facsimile copy - 12-7-09

    e.  Facsimile to defendant- 12-11-09,

    f.  Certified letter to Defendant and Facsimile copy - 12-09-09

    g.  Letter to Defendant, 11-30-09.

    h.  Facsimile to Defendant 11-08-09

    i.  Letter to Defendant 09-16-10

    j.  Letter to Defendant 09-25-10

    k.  Facsimile to Defendant 10-1-12

    l.  Facsimile to client 06-28-10

    m. Email to Plaintiff 11-10-10.

    n.  Letter to Defendant 11-16-10

    o.  Verified Answer 09-15-10

16. First District Court  - Green Tree Packing v. RJLL Corp - cv-039219-09

    a.  Summons & Complaint filed 09-29-09

    b.  Defendant Verified Answer 11-17-09

    c.  Defendant Affidavit filed 12-1-09

    d.  Notice for Discovery & Inspection 11-17-09

    e.  Notice Take Deposition Upon Oral Examination 11-17-09

    f.  Judgement Entered and revision of file - 11-09-09

    g.  Facsimile to Certified Lawyers

17. Suffolk Supreme Court - Hutton Electric Contracting Corp. v. Ciao Baby et al. Index No.: 000610/2008

    a.  Summons & Complaint filed 1-22-08

    b.  Defendant Verified Answer filed 02-15-08.

    c.  Notice Take Deposition Upon Oral Examination 02-20-08

    d.  Notice Take Deposition Upon Oral Examination 09-16-14

    e.  Notice for Discovery & Inspection 02-20-08

    f.  Motion filed 08-29-13

    g.  Court Appearance for Preliminary Conference: 02-12-09

    h.  Order to Show Cause filed 05-6-14.

i.   Order to Show Cause filed 07-2-13

j.   Order to Show Cause filed 07-15-14

k.   Facsimile to client: 7-24-13,

l.   Facsimile to Plaintiff 08-23-13,

m.   Letter to Plaintiff 02-08-07

n.   Certified Letter to Plaintiff 03-20-14

o.   Certified letter to Plaintiff September, 2014

p.   Facsimile to Client

q.   Certified letter to Client 10-28-14

r.   Court Appearances: 01/22/2014 Supreme Initial (first time on) STATUS CONFERENCE HELD HON. ELIZABETH H. EMERSON/COMM

s.   Court Appearances: 03/06/2014 Supreme Trial CONF ELIZABETH H. EMERSON/COMM

t.   Court Appearances: 04/10/2014 Supreme Trial CONF HON. ELIZABETH H. EMERSON

u.   Court Appearances: 01/14/2015 Supreme Trial HON. ELIZABETH H. EMERSON

v.   Court Appearances: 03/12/2015 Supreme Trial HON. ELIZABETH H. EMERSON

w.   Court Appearances: 04/03/2015 Supreme Trial STAYED HON. ELIZABETH H. EMERSON

x.   Court Appearances: 10/28/2015 Supreme Trial REMOVE STAY HON. ELIZABETH H. EMERSON

y.   Examination Before Trial held at Suffolk Riverhead 03-28-08

z.   Court order sent to Plaintiff

aa.   Process Server fee for OSC 9-23-13

bb.   Executive Attorney Service 09-01-14

Cc.   Executive Attorney Service 12-26-14

18. CIAO BABY RESTAURANT FOUR CORPORATION

a. Delaware Corp. Folder:

    i.  JOSEPH DIGIROLOMO and LEONARD OLIVA passport photocopies.

    ii.  Email exchange between GREGG NOLAN 08-18-08

    iii.  Delaware "Ciao Baby" Corp. Acknowledgement

B. Ciao Baby Broker Funding Folder:

    i. Emails between OLIVA and Anthony Ponzo

    ii . Emails with Robin Brooks 08-12-08 (OVERSEAS FUNDING)

    iii. Emails with Paul Penzone 08-11-08 (OVERSEAS FUNDING)

    iv. Emails with OLIVA and Anthony Penzone. (OVERSEAS FUNDING)

    v. Emails with GREGG NOLAN 08-25-08

c.  Ciao Baby Annual Report Folder Review and Preparation of Financing Papers

    i. Emails with Robin Brookes

    ii. Form 2553 instructions

    iii. Marko Capital Checklist

    iv. SS 4 Form

    v. 3rd Millennium Consulting/ Ciao Baby compensation agreement

    vi. State of N.Y D.O.S agreement

    vii. Makro Capital Agreement

    vii. 05-07-09 Letter to Delaware Division of Corp

    viii. Facsimile to NYS Department of Corporation - 10-22-08

    ix. 09.03.08 letter acknowledging Ciao Baby having sufficient operational capital to maintain business.

    x. Proposed & adopted amended bylaws of Ciao Baby Restaurant Four Corp. Inc. (JOSEPH DIGIROLOMO & LEONARD OLIVA)

19.  CIAO BABY RECORDS ( In reference to Index No.: 73320/2010)

    a.  Monthly operating reports JJM-63 (January, 2011-July, 2011)

      i.  Emails with Harold Berzow 09.08.11

      ii.     Chapter 11 filed with Index No.: 79750/2010 (U.S.B.C/ Eastern District). Contents: Notice of deadline requiring filing proofs of claims on or before September 1, 2011.

      iii.    Preparation and Review of Affidavit of JOSEPH DIGIROLOMO (79750/2010)

      iv.    Several meetings with Harold Berzow, Bankruptcy protection for corporation to protect assets.

  b. United States Department of Labor

      i. HILDA SOLIS v. JJM-63, Ciao Baby (Consent Judgement)

      ii. Capital One Bank Records RJLL.

20. 3rd District Court of Nassau - Seafood Emporium Fish Market v. RJLL - Index No.: 027569/2009

  a. Verified Answer 08-19-09 to PLAINTIFF's Summons & Complaint of 07-09-09

  b. Notice of Discovery and Inspection 09-30-09

  c. Reply Affidavit 01-29-10

  d. Notice of Cross Motion for Summary Judgement requesting dismissal of complaint - 12/15/09

  e. Notice of Default 10-25-10.

  f. Notice of Entry 3-5-10.

  g. Facsimile to DEFENDANT  04-16-10.

  h. Letter to Plaintiff 09-01-09

  i. Letter to Plaintiff 11-11-09

  j. Facsimile to Plaintiff 12-18-09

  k. Letter to Court 08-21-09

  l. Facsimile to Court 01-15-10

  m. Facsimile to client 01-19-10

  n. Facsimile to client 01-15-10

21. Nassau Supreme MRJ Sales Inc. v. RJLL Corporation - 21536/2009

  a. Verified Answer 12-15-09 to Summons & Complaint filed on 10-13-09.

  b. Defendant's Demands 12-15-10.

    c.  Notice to Take Deposition Upon Oral Examination 12-25-10.

    d.  Court Appearance for Preliminary Conference: 03-09-10

    e.  Court Appearance for Compliance Conference: 07-01-10

    f.  Reply to Plaintiff's Motion to Summary Judgement 09-02-10

    g.  Notice of Cross Motion 08-11-10.

 

    h.  Facsimile to Ralph Bontempo 11-09-10

    i.  Facsimile to Court 9-20-10

    j.  Facsimile to Plaintiff 9-20-10

    k.  Facsimile to Plaintiff 08-16-10

    l.  Facsimile to Plaintiff 03-20-10

    m.  Court Appearances: 11/10/2010 Motion   FULLY SUBMITTED     Hon. ANGELA G. IANNACCI

    n.  Court Appearances: 01/27/2011 Supreme Trial DISPOSED/RESULT OF A MOTION   Hon. ANGELA G. IANNACCI

22. RJLL Corporation (Bankruptcy) - Index.: 79750-2010

    a.  Certified Letter to Plaintiff Attorney 01-07-11

        Chapter 11

        i.    Order to Show Cause 3-12-12 (B4 form)

        ii.   Order approving debtors disclosure statement and hearing schedule

        iii.  Notice of hearing from debtor's attorney to consider application of counsel to the debtor for final allowance of compensation for services rendered and reimbursement of expenses actually incurred.

        iv.  Facsimile to Jay Gart 06-08-10

        v.   Interim order authorizing debtor's use of collateral and granting adequate protection to claim/lien. 1-31-11

        vi.  Notice of hearings for an order establishing final date for filing proofs of claim against debtor and approving proposed bar date notice, 3-30-11.

vii.   Motion of debtor for an establishing final date for filing proof of claim against the debtor and approving proposed bar date notification.

viii.  Motion for an order authorizing debtor's use of cash on an emergency basis of bankruptcy code, 12-12-10.

ix.    Notice of hearing to consider application of counsel and the debtor for final allowance of compensation for the services rendered and reimbursement of expenses actually incurred, 7-24-12.

x.     Letter to General unsecured creditors, 4-2-12.

xi.    Incomplete Ballot

xii.   Emails from Linda Trent to JOSEPH DIGIROLOMO, 1-24-11.

xiii.  Application for an order pursuant to Bankruptcy rule 1007(a)(4) and logical bankruptcy rule 1007-1 for an order extending time to file schedule, 12-17-10.

xiv.   Interim order authorizing debtor's use of collateral and granting adequate protection claim/lien, 3-24-11.

xv.    Order granting interim relief and scheduling hearing information, 01-07-11.

xvi.   Notice of hearing for an order extending the exclusince period during which the debtor  may file a plan and solicit acceptance to plain of reorganizing under 11 U.S.C Section 1121d, 03-30-11.

xvii.  Emergency order authorizing debtor's use of cash collateral on an emergency basis pursuant to section 363 of the bankruptcy code, granting adequate protection and scheduling and approving the form and method of notice of the hearing on debtor's motion on an interim basis, 12-21-10.

xviii. Motion of the debtor for authorization to pay prepetition date payroll

xix.   Email to Mike Amato, Associate to Harold Berzow, Esq.- 1-4-11

xx.    Facsimile to Tech Advisory Unit

xxi.   Power of Attorney (JJM-63)

    C. RJLL Corporation Bankruptcy Petition:

        i. Debtors Amended Plan (Ch.11), 5-23-12. (3 copies)

        ii. Order confirming debtors amended plan, 7-23-12.

        iii. Final Decree, 04-11-13.

        iv. Joseph DiGirolomo Affidavit pursuant to EDNY CBR-1007-4.

    v. letter to plaintiff counsel 12-1-10

        vi. Facsimile to Harold S. Berzow, 12-2-10

23. JJM-63 to Route 25, LLC.

  a. Facsimile to Buyer - 09-16-11

  b. Letter to Jeffrey Hulse and Facsimile - 09-20-14

  c. Asset Purchase Agreement

  d. Executed Contract

  e. Certified Letter to New York State Department of Tax and Finance, (12-23-11)

  f. Certified Letter to IRS, 11-23-11

  g. Facsimile to Buyer, 9-16-11

  h. Facsimile and letter to buyer, 9-23-11

  i. Certified Letter to NYSDOT&F, (11-23-11)

  j. Emails with LEONARD OLIVA, 10-24-11.

  k. Notice to Escrow Agents, 08-29-11.

  l. Notice of Levy on Wages, Salary, and other income (IRS), 9-9-11.

24. Nassau Supreme - Cremosa Food v. DDOB, RJLL, JJM-63 - Index No.: 13362/2009

  a. Verified Answer to PLAINTIFF's Summons & Complaint, 08-06-09.

  b. Notice To Take Deposition Under Oral Examination, 08-23-11

  c. Notice for Discovery and Inspection, 08-06-09

  d. Court Appearance for Preliminary Conference: 12-8-12

  e. Notice to Take Deposition Under Oral Examination, 08-06-09

    f.  Set of Interrogatories

    g.  Set of Interrogatories

    h.  Two Certified Letters to Plaintiff, 11-11-11

    i.  Federal Express to Plaintiff, 1-14-11.

    j.  Facsimile to Court, 03-20-13

    k.  Letter to Court, 6-22-10

    l.  Court Appearance for Compliance Conference: 12-18-12

    m. Depositions: 4-24-13

    n.  Certification Conference: 4.25.13

    o.  Court Appearances: 11/29/2012 Supreme Trial REMOVE STAY before HON. JEROME C. MURPHY

    p.  Court Appearances: 03/03/2010 Supreme Initial (first time on) STAYED before HON. IRA B. WARSHAWSKY

25. Suffolk Supreme - Bank of Smithtown v. DDOB, JOSEPH DIGIROLOMO and LEONARD OLIVA - 48417/2009

    a.  Verified Answer to PLAINTIFF's Summons & Complaint, 1-28-10.

    b.  Notice to take depositions under oral examination, 1.28.10

    c.  Notice of Discovery & Inspection, 1-28-10

    d.  Court Appearance for Preliminary Conference: 03-18-15

    e.  Motion to Dismiss, 6.17.14

    f.  Motion to Dismiss, 7-3-14.

    g.  Defendant's Reply to Plaintiff's motion, 5-27-15

    h.  Facsimile to Court, 6-11-14

    i.  Facsimile to Plaintiff, 4-11-14

    j.  Facsimile to Plaintiff, 6-11-14

    k.  Facsimile to Plaintiff, 3-24-10

    l.  Certified Letter to IRS, 4-23-10

    m. Certified Letter to Plaintiff, 11-19-09

    n.  Facsimile to Plaintiff, 3-19-10

    o.  Facsimile to Plaintiff, 6-23-10

    p.  Facsimile to plaintiff, 3-17-10

q. Certified letter to IRS, 4-18-13

r. Facsimile to Plaintiff, 3.25.10

s. Facsimile to Plaintiff, 6-23-10

t. Facsimile to Court, 3-19-10

u. Stipulation of Settlement filed, 07-30-14

v. Court Appearance: 06-12-14 for Motion/Order of Contempt before HON. Tarantino. SUFFOLK.

26. Nassau Supreme - NY Packaging, LLC., v. Joseph DiGirolomo, Leonard Oliva, RJLL Corporations "Ciao Baby" - 601929/2013, 002526/2011

a. Verified Answer to Plaintiff's Summons & Complaint, 3-28-11

b. Notice to Execute Examination Before Trial, 10-4-11

c. Deposition Demands, 3-31-11

d. Combined Demands, 7-5-11

e. Second Request for Documents, 8-11-11

f. Response to Preliminary Conference, 07-06-11. Application of Bankruptcy

g. Affidavit in support of Cross Motion for Summary Judgement and Opposition to Plaintiff's motion

h. Cross Motion, 10-17-13

i. Facsimile to Plaintiff, 7-9-12

j. Facsimile to Hal Sherry, 6-15-12

k. Facsimile To Plaintiff, 10-11-11

l. Letter to Plaintiff, 7-19-12

m. Letter to Client, 06-30-11

n. Facsimile to Plaintiff, 07-11-12

o. Facsimile to Client, 9-30-11

p. Facsimile to Plaintiff, 7-10-11

q. Facsimile to Ralph Bontempo, 9-16-11

r. Letter to Client, 8-17-11

s. Certified Letter to Client, 10-17-11

t.  Facsimile to Plaintiff, 09-03-11

u.  Facsimile to Court, 09-14-11

v.  Facsimile to Plaintiff, 09-14-11

w.  Certified Letter to Client, 06-08-12

x.  Court Appearance for Preliminary Conference: 6-27-11

y.  Court Appearance for Compliance Conference: 09-15-11

z.  Court Appearance for Certification Conference: 09-20-11

aa. Court Appearance: 4-10-12

bb.      Stipulation of Discontinuance for DDOB, 11-11-13

cc. Ralph Bontempo Fees for P.C, 6-28-11

dd.      Bee Reporting Fees, 10-17-11

ee. Ralph Bontempo, Examination Before Trial 09-20-11

ff.  Stipulation of Settlement, 7-19-12.

27.  Suffolk County District Court - Ridge Produce v. JJM-Restaurant Corporation (Ciao Baby). Index No.: CEC 13614 - 06

a.  Verified Answer of Plaintiff's Summons & Complaint, 01-12-07

b.  Notice of Discovery and Inspection, 01-12-07

c.  Notice to Take Deposition Under Oral Examination, 01-12-07

d.  Notice of Motion, 03-18-08

e.  Motion to Dismiss Complaints, 07-25-07

f.  Facsimile to Plaintiff, 8-19-08

g.  Facsimile to Plaintiff, 12-13-07

h.  Facsimile to Client, 06-18-07

i.  Facsimile to Plaintiff, 3-17-18

j.  Facsimile to Plaintiff, 08-11-08

k.  Letter to Client, 03-08-08

l.  Facsimile to Plaintiff, 07-17-07

m. Letter to Lovettco, 03-17-07

n.  Facsimile to Client, Ronald DiGirolomo 07-17-07

o.  Letter to Client, 07-23-08

p.  Letter to Client, 08-25-08

q. Facsimile to Plaintiff, 07-21-08

r. Facsimile to Client, 02-18-07

s. Facsimile to N.A.S, 07-22-08

t. Facsimile to Plaintiff, 08-12-08

u. Facsimile to NYSDOL, 10-22-08

v. Facsimile to Jay Gart, 05-07-09

w. Letter to Client, 01-20-09

x. Letter to Court, 09-20-07

y. Letter to Client, 08-15-07

z. Facsimile to Plaintiff, 03-03-09

aa. Letter to Client, 08-14-07

bb.      Facsimile to Court, 06-01-09

cc. Federal Express, 9-16-08

dd.      Federal Express, 11-05-08

ee. Stipulation of Settlement

28. New York State Department of Tax and Finance. Ciao Baby: Tax Matter Dispute (Audit)

a. Federal Express to Jay Gart, 2-10-08.

b. Federal Express to Jay Gart, 3-31-08

c. Federal Express to Jay Gart, 3-13-08

d. Bank of Smithtown Records

e. Review and meetings with clients as to 2003 U.S Corporation Income Tax Return and 2005 U.S Corporation Income Tax Return and 2004 U.S Corporation Income Tax Return

f. 2004 U.S Individual Tax Return.

g. 2005 U.S Individual Tax Return.

h. 2003 U.S Individual Tax Return

i. Client Letter (Leonard Oliva) to Department of State, 04-25-08.

j. New York State Department of Tax & Finance, Power of Attorney, (Joseph DiGirolomo) (Leonard Oliva)

k. Review of Part Quarterly Filers, 2005.

l. Review of New York State and Local sales and use tax return for part quarterly filers, 2006.

m. Review of Sales and use tax return for part quarterly filers, 2007.

n. Review of Purchase Mark Ups.

o. Telephone conference calls with Jay Gart.

29. Suffolk Supreme - Commissioner of the State Insurance Fund v. DDOB Corp. - 45246/2010

a. Verified Answer to Plaintiff's Summons and Complaint, 03-28-11.

b. Notice to Take Deposition Upon Oral Examination,  03-25-11.

c. Court Appearance for Preliminary Conference: 06-07-11

d. Facsimile to Court, 06-19-12

e. Facsimile to Court, 02-07-12

f. Facsimile to Plaintiff, 12-08-11

g. Facsimile to Judge, 12-08-11

h. Facsimile to Jay Gart, 04-14-11

i. Court Appearance for Compliance Conference: 03-07-12

j. Notice of Entry, 03-09-12.

k. RJI Filed

l. Court Appearance: 02/17/2012 Motion FULLY SUBMITTED before HON. DENISE F. MOLIA

m. Court Appearance: 08/31/2012 Motion    FULLY    SUBMITTED before HON. DENISE F. MOLIA

30. Eastern District Court - Marcovecchio et al v. Ciao Baby et al - cv. 09-2081

a. Stipulation to extend time to answer Plaintiff's Summons & Complaint, 07-13-09.

b. Emails to Clients regarding funding (V3), 06-12-09.

c. Emails to Clients regarding funding (V3), 09-28-09

d. Facsimile to Plaintiff, 10-4-10

e. Facsimile to Plaintiff, 06-16-09

f. Email thread between Harold Berzow, 07-15-09.

g. Stipulation of Discontinuance, 07-13-09

  h. Letter to Court, 4-15-10

  i. Letter to Meltzer Lippe Goldstein & Breitstone, LLP., (07-23-10)

  j.  Facsimile to Plaintiff, 07-13-09.

31. Geoff Dreyhaupt, Shaina Weismann, John Fox et al. v. RJLL CORP., a New York Corporation - 11-01909.

  a. Letter and Facsimile to Plaintiffs, 05-11-12.

  b. Facsimile to Plaintiff, 04-06-12

  c. Facsimile to Plaintiffs, 04-09-12

  d. Letter to Plaintiff, 04-09-12

  e. Emails to Plaintiff, 05-10-12.

  f. Facsimile to Court, 06-01-09

  g. Power of Attorney for RJLL Corp.

  h. Facsimile sent to Jay Gart, 05-28-13

32. Supreme Nassau - Montebello Food Corp v. RJLL Corp. - 017093/2009

  a. Verified Answer to Plaintiff's Summons & Complaint, 10-05-09

  b. Notice to Take Deposition Upon Oral Examination, 10-05-09

  c. Notice for Discovery & Inspection, 10-05-09

  d. Court Appearance for Preliminary Conference, 11-17-09.

  e. Court Appearance for Certification Conference, 04-26-10.

  f. Facsimile to Court, 05-14-10.

  g. Facsimile to Court, 03-09-10

  h. Facsimile to Plaintiff, 03-12-10

  i. Facsimile to Plaintiff, 03-9-10

  j. Facsimile and Letter to Plaintiff, 03-11-10

  k. Facsimile to Plaintiff, 12-07-10

  l. Court Appearance for Compliance Conference held on  04-14-10.

  m. Court Appearance for Certification Conference held on 06-15-10.

  n. Pre-Trial Conference held on 10-27-10.

  o. Court Appearance: 02-03-11 Supreme Trial STAYED before HON.   F. DANA WINSLOW

    p. Court Appearance: 07-20-2016 Supreme Trial REMOVE STAY before DCM TRIAL JUDGE

33. Nassau Supreme - MOSTAVA, TAREK vs. DDOB CORPORATION - 0011242/2012. **(Tarek Mostava was one among several private investors ($100,000.00) who was issued points in the Carle Place CIAO BABY restaurant but was defrauded so sued to recover his money represented by Anthony A. Capetola Law Offices P.C.)**

    a. Verified Answer for all DEFENDANTS to PLAINTIFF's Summons & Complaint, 11-21-12

    b. Notice to Take Deposition Upon Oral Examination, 07-12-13

    c. Notice to Take Deposition Upon Oral Examination, 06-05-15

    d. Notice to Execute Examination Before Trial Transcript, 12-22-15

    e. Notice of Motion, 09/2013

    f. Notice of Appearance for Demand & Complaint for all DEFENDANTS, 09-12-12

    g. Notice for Discovery & Inspection, 07-09-13

    h. Federal Express to PLAINTIFF'S attorney, 04-17-14

    i. Facsimile to Judge, 2-27-13

    j. Facsimile to Judge, 01-21-14

    k. Facsimile to Judge, 09-11-14

    l. Facsimile to Judge, 06-20-14

    m. Facsimile to Judge, 05-09-14

    n. Facsimile to Judge, 01-21-14

    o. Certified Letter to Clients, 03-18-24

    p. Individual Verification for all Defendants, 11-21-12

    q. Defendants' response to Discovery & Inspection, 04-29-14

    r. Defendant's response to Discovery & Inspection, 07-15-15

    s. Defendant's response for Combined Demands, 04-17-14

    t. Defendant's Notice for Combined Demands, 06-05-15

    u. Defendant's Notice for Combined Demands, 07-12-13

    v. Defendant's Affirmation in Support of Summary Judgement, 08-27-13.

w. Defendants' Affidavits, 08-27-13

x. Court Appearance for Preliminary Conference, 03-27-13.

y. Court Appearance for Compliance Conference, 12-11-13.

z. Court Appearance for Certification Conference, 05-03-16.

aa. Court Appearance dates for Trial, 12-07-15, 02-19-16, 04-26-16, Court Appearance dates for trial 10-03-16, 10-14-2016, 10-17-16, 10-18-16.

bb.      Plaintiff Deposition, 09-30-15.

cc. Preparation and review of all pleadings etc. for 4 books for trial; receipt and review of Plaintiff's trial books.

dd.      Court reporter deposition of Plaintiff acquired.

34. District Attorney County of New York, Cyrus Vance Jr., Investigation into Organized crime involvement in all three restaurants as surveillance showed known Gambino Crime family member frequenting the restaurants.

a. Letters to Michael Gates, Assistant to District Attorney of New York as to Larry Blumstein, 02-10-12, 02-13-12

b. Court Appearance, 02-21-12. Appearance at District Attorney's for New York County in regards to Larry Blumstein's Grand Jury testimony.

c. Letters to Michael Gates, Assistant to District Attorney of New York as to Joseph DiGirolomo, 02-10-12, 02-13-12

d. Court Appearance, 03-06-12. Appearance at District Attorney's for New York County in regards to Joseph DiGirolomo's Grand Jury testimony.

e. Preparation of Larry Blumstein for Grand Jury, 2-20-12.

f. Preparation of Joseph DiGirolomo for Grand Jury, 03-05-12.

35. New York State Department of Tax and Finance

a. Appearances at Attorney General for the State of New York in Manhattan with Jay Gart regarding outstanding taxes allegedly owed to New York State Department of Tax and Finance/

b. Number of meetings with clients between September of 2008 and the present: 32 (both as a group and individually)

26

36. As per the retainer agreement executed by the parties herein an attorney hourly fee of $300.00 per hour WAS DUE AND OWING reflecting the aforementioned ²work, Exclusive of costs and disbursements.*

## AND FOR A FIRST CAUSE OF ACTION
## (CIVIL CONSPIRACY)

37. Plaintiffs, repeat, reiterate, and reallege these allegations set forth above.

38. Defendants, LEONARD OLIVA, ELVA OLIVA, TWENTY SEVEN RESTAURANT, LLC, RONALD DIGIROLOMO, JOSEPH DIGIROLOM, and LARRY BLUMSTEIN conspired to defraud and deprive plaintiffs of their funds, business receipts, business trade secrets, business reputation, money(ies) and legal rights knowing that the defendants acted in concert with one another enabling defendants to curry favor, secure solicited favors under pretenses that monies would be forth coming and such that diverting of funds left liabilities open and unpaid including legal fees rendered by plaintiffs.

39. In furtherance of said conspiracy, PLAINTIFFS funds and monies due and owed have been converted, looted, transferred, fraudulently conveyed, misappropriated or disposed of by the DEFENDANTS. Upon information and belief, Defendants, are each gainfully employed and have separate residences in Nassau County, New York despite the owed and unpaid legal bills.

40. By reason of DEFENDANTS conspiracy, PLAINTIFFS are entitled to recover damages as determined by the court.

---

² *Note: The aforementioned partial work history does not include Court costs; litigation costs and disbursements which will be provided during discovery. They include but are not limited to postage, copying, Court fees, deposition fees and telephone costs.

## AS AND FOR A SECOND CAUSE OF ACTION
### (CONVERSION)

41.  Plaintiffs repeat, reiterate and reallege the allegations set forth above.

42.  On November 1, 2014, Defendants opened a new private checking account with Capital One Bank funded by corporate funds which was a conversion of plaintiff's funds and/or property to which they are not entitled and have maintained control and or disposed of said property for which the PLAINTIFFS did not receive full and  fair consideration.

43.  Defendants benefited from said funds and property transferred and the use and enjoyment that they have derived, and continue to derive, there from.

44.  Defendants retention of the benefit they derive, and continue to derive, from the use and enjoyment of plaintiff's funds and/or property is and continues to be unjust.

45.  As a result of defendants conversion of plaintiff's funds and its property, for which they were not entitled and for which plaintiffs did not receive any fair consideration, co-defendants have been unjustly enriched, at plaintiff's expense, in an amount to be determined at trial, including loss of business by plaintiff.

## AS AND FOR A THIRD CAUSE OF ACTION
### (BREACH OF CONTRACT)

46. Plaintiffs repeat, reiterate, and reallege the allegations set forth above.

47. Between the years of 2008 and present time , the defendants have not fully satisfied their legal agreement to satisfy all debts to the plaintiffs in bad faith

52. At all times relevant herein, the plaintiffs engaged the defendants in confidence and trust with respect to good faith without any adverse or other foreseeable changes in the plaintiffs' relationship in its legal capacity with the defendants. At all times hereafter mentioned, there existed a good working relationship between the plaintiffs and the defendants.

53. Plaintiffs have duly performed all conditions of the retainer agreement between it and the defendant's on its part to be performed. Plaintiffs expected full payment on all liabilities as aforementioned as agreed. Defendants have not paid the monies owed and due to the plaintiff's on all liabilities as agreed and stated herein.

54. As a result of the foregoing, plaintiff estimates damages in the excess of the jurisdiction dollar amount of this Court.

55. As stated above, at all times relevant herein, plaintiffs negotiated with the defendants in confidence and trust and good faith, never anticipating, and/or expecting and/or foreseeing a change in the relationship between the plaintiffs and defendants such that the resulting actions of negotiation would result in the forcible and wrongful taking of the businesses by the defendants in violation of the covenant of good faith.

56. The defendants breached the contractual agreement by failing to notify plaintiff of the illegal taking and if they did notify the plaintiff of the illegal taking despite ongoing negotiations was both a direct and proximate result of this constructive fraud such that the plaintiffs sustained damages.

57. Defendant's constructive fraudulent scheme was malicious, wanton, and undertaken in conscious disregard of plaintiffs property rights, and defendants are liable for punitive damages.

30

## AS AND FOR A FIFTH CAUSE OF ACTION
## (QUANTUM MERUIT)

58. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 58 of this complaint as if fully set forth herein.

59. Plaintiffs provided legal services for 8 years including but not limited to time, labor, court costs, copying, facsimiles, telephone calls, and other expenses and services to the defendants for which payment has not been made.

60. To their detriment, Plaintiffs relied on an agreement and expected to be paid by the defendants for the outstanding liabilities including outstanding professional legal invoices.

61. The defendants have wrongfully refused to honor the terms as agreed and have wrongfully refused to pay any portion of the outstanding legal liabilities.

62. There remains a balance due and owing to the Plaintiffs in the amount that exceeds the jurisdictional dollar amount of this court with interest, attorneys fees, court costs and disbursements; of which no part of which has been paid despite due demand from Defendants.

## AS AND FOR A SIXTH CAUSE OF ACTION
## (FRAUDULENT INDUCEMENT)

63. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered 1-61 of this complaint as if fully set forth herein.

64. The defendants throughout eight years of representation by the plaintiffs, made material misrepresentations of fact that plaintiffs would be paid in full over time for all legal services plaintiffs rendered. In fact there was a period of

time when defendants were securing additional capital financing (approximately $10 million dollars) for expansion of their various restaurants along the North East Coast of the United States.

65.    The defendants were aware of the falsity of the aforementioned material misrepresentation at the time the same were made.

66.    The defendants made the aforementioned material misrepresentations for the purpose of inducing the plaintiffs reliance on them so as to convince plaintiffs to continue to represent the defendants in years of ongoing legal matters including but not limited to discovery, pleadings, litigation, preparation for depositions court conferences and trials, in a scheme designed to defraud the plaintiffs out of their monies.  Eight years of representation and still never paid in full despite repeated demands for final payment.

67.    Given the personal relationship between the plaintiffs and two of the defendants as cousins with over 40 forty years of a personal relationship and the solid appearance of authenticity, plaintiffs justifiably and reasonably relied on the aforementioned material misrepresentations made by defendants.

68.    The plaintiff's justifiable reliance on the defendants' aforementioned material misrepresentations caused the plaintiffs to suffer significant damages in the form of financial loss of substantial revenues and out of pocket disbursements and expenses in excess of $300,000.00.

69.    Based on the forgoing, defendants are liable to the plaintiffs in the amount of $300,000.00. plus expenses, disbursements, telephone calls, and punitive damages on account of each fraudulent inducement, in an amount to be determined at trial.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Federal Civil RICO, 18 U.S.C. Sect. 1962©
### Defendants Oliva, Mevorah and Hulse

70.    Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

71.    Defendants violated RICO and Plaintiff was injured as a result

72.    Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. Sect. 1961(3).

73.    Each Defendant violated 18 U.S.C. Sect. 1962 © by the acts described in the prior paragraphs and as further described below.

74.    The Enterprise: Defendants, Oliva, Mevorah and Hulse together were involved as attorneys or as parties in lawsuits pertaining to commercial loans individually guaranteed by Leonard Oliva and Joseph DiGirolomo.

75.    Hulse as the attorney for Peoples Bank filed three separate lawsuits against the guarantors Leonard Oliva and Joseph DiGirolomo to collect on those loans.    Defendants Oliva and DiGirolomo were partners in three restaurants resulting in three lawsuits.   Defendants filed verified answers to each lawsuit in which an affirmative defense for DiGirolomo and Oliva were pleaded.   Theye denied signing any personal guarantee agreement such that there was no obligation personally to repay the loan.   Hulse commented the bank does not lend commercial paper without a personal guarantor.

76.    Nevertheless, on the Commack restaurant loan the defendants settled the case for $80,000 and payment was made directly to Hulse.

77.    On the Massapequa restaurant loan it was also settled with a lump sum down and payments over time.  Oliva and DiGirolomo made one payment then defaulted on the settlement agreement.   Hulse moved for judgement on the settlement agreement and got his money judgment which was unsatisfied as of January 1, 2020;

78.    On the Carle Place restaurant loan Hulse filed a motion for summary judgment (pre-discovery) despite our answer which pleaded an affirmative defense that Oliva did not sign a personal guarantor agreement.  Three months later I received a money judgment on this case.  I reviewed the Court file and there was no affidavit of service as to the motion.  The summary judgment motion was granted on default.

79.    Thereafter I consulted with another attorney, Michael Shulmaentertain filing the motion to vacate but he needed a five thousand dollar retainer.  That ended that notion of retaining outside counsel as these guys could not pay me timely.

80.    Oliva knew Hulse took $80,000 on the first Commack loan case; was already paid $16,000 on the Massapequa as per a settlement agreement and paid nothing on the Carle Place loan case.   I explained Hulse would take $80,000 on the Massapequa loan and $80,000 on the Carle Place given his judgment was based upon default and there was no affidavit of service   As to the federal labor case with a  judgment for $454,000, I explained the attorney would take $95,000 or approximately twenty-five percent. Because a review of the federal case file revealed there were specific directives as to service of papers and yet there mo sffodavitsof service fo any of the papers.

81.    Oliva said he needed settlement agreements which I drafted, signed and gave to Oliva.   He needed the agreements to show others in order to get the

money. One of those others was his wife from whom he got money to pay these debts.

82.    Oliva is paying all these debts because the partners demanded all debts must be paid and when that is done the Massapequa CIAO BABY restaurant is his.  The other partners knew plaintiffs were owed a great deal of money and after meeting with them, plaintiffs explained that they might be able to get dismissed the debt owed on both the federal labor case and on the Carle Place loan case.  In both Court files affidavits of service were absent.  In fact in the federal labor case the Court ordered service be completed and proof be filed with the Court. The Carle Place loan case secured a DEFAULT judgment and no affidavit of service is in the Court file so this judgment would have been vacated and dismissed given the fact that Oliva denied any personal guarantee was ever given as he pled in his answer.  Thus, plaintiffs agreed to make the effort to vacate and dismiss the judgments in the Carle Place loan case and the federal labor case. Dismissal of these judgments or partial dismissal would mean the plaintiffs would get paid from the monies received from Oliva and no further monies had to be paid to Plaintiffs from the four (4) partners.

83.    In a letter to Oliva dated January 27, 2017, he was advised to cease and desist from pursuing any alleged criminal intent to convert corporate monies into personal funds. It was crystal clear what the majority members decided to do and that was to use monies to pay for one debt (Carle Place loan and Federal Labor case)) and pay another (legal services) with the understanding the law firm would endeavor to permanently eliminate the judgments given proof there was never any service of papers in either Court file.  Oliva chose to ignore this letter and pursue his own course at the expense of plaintiffs name, reputation, both professionally and individually and at great financial hardship to plaintiffs.  Defamation, slander and libel are the tools Oliva uses to attempt to gain advantage over plaintiffs.

84.    In fact, Plaintiffs last statement for professional services rendered was for $37,500.00.  This was and still is a debt partially paid AND OWED BY Oliva. ONCE AGAIN, Oliva demonstrated his taste for greed.  What Oliva did as to the last bill was reduce it to $30,000.00 which Plaintiffs agreed to and THEN cut Plaintiffs a check for $7500 telling Plaintiffs to get the rest from the other guys. Oliva testified at the grand jury that he owed no monies to plaintiffs.  Where I come from that's called perjury.

**WHEREFORE**, Plaintiffs request that this Court:

AS TO THE FIRST CAUSE OF ACTION:

1. Damages in the amount to be determined by the Court at trial;
2. Costs;
3. Disbursements; and
4. Any other relief deemed just and equitable by the court.

AS TO THE SECOND CAUSE OF ACTION;

1. Damages in the amount to be determined by the Court at trial;
2. Costs;
3. Disbursements; and
4. Any other relief deemed just and equitable by the court.

AS TO THE THIRD CAUSE OF ACTION:

1. Damages in the amount of $300,000.00 or to be determined by the Court at trial;
2. Costs;
3. Disbursements; and
4. Any other relief deemed just and equitable by the court.

AS TO THE FOURTH CAUSE OF ACTION:

1. Damages in the amount to be determined by the Court at trial, plus punitive damages of one million dollars ($1,000,000.00);
2. Costs;
3. Disbursements; and
4. Any other relief deemed just and equitable by the court.

AS TO THE FIFTH CAUSE OF ACTION:

    1. Damages in the amount of $300,000.00 or to be determined by the Court at trial;

    2. Costs;
    3. Disbursements; and
    4  Any other relief deemed just and equitable by the court.

AS TO THE SIXTH CAUSE OF ACTION:

    1.    Damages in the amount of $300,000.00 plus punitive damages of one million dollars ($1,000,000.00);

    2.    Costs;
    3.    Disbursements; and
    4.    Any other relief deemed just and equitable by the court.

AS TO THE SEVENTH CAUSE OF ACTION:

1.Damages in the amount of $10,000,000.00 or to be determined by the Court at trial; plus $20,000,000.00 in punitive damages

2.  Costs;

3.    Disbursements; and

4.    Any other relief deemed just and equitable by the Court.

Dated: Manhasset, New York
September 20, 2020

_____
Alfred DiGirolomo Jr. Pro-Se
102 Castle Ridge Road
Manhasset, New York 11530
(516) 297-1158

THIS SHALL CONSTITUTE A RETAINER AGREEMENT FOR LEGAL SERVICES BY AND BETWEEN:

**DiGirolomo & DiGirolomo, P.C.**, 595 Stewart Avenue, Suite 510, Garden City, New York  11530 and

**JJM-63 Corp., RJLL Corp., and DDOB, Corp. each d/b/a CIAO BABY,** President, Joseph DiGirolomo

**THIS SHALL CONSTITUTE A LEGALLY BINDING CONTRACT AND SHOULD BE CAREFULLY REVIEWED.**

---

Dear Mr. Joseph DiGirolomo:

This writing confirms that you have retained this firm to act as your attorneys both as corporate counsel and to represent you personally in all matters in any legal proceeding either as defense counsel or to prosecute any matter presented to this office.

It is further understood that:

> The retainer fee set forth below does not include any services rendered in Appellate Courts or any actions or proceedings other than the matter for which this office has been retained.

> You authorize this firm to take any steps, which, in the sole discretion of the firm, are deemed necessary or appropriate to protect your interest in the matter.

> I have agreed to represent you and you have paid me a $1,000.00 retainer.  The amount of our eventual fee is to be based upon our regular schedule of established hourly time charges, along with any out-of-pocket disbursements (such as Court costs, messenger services, transcripts of proceedings, process server fees, deposition and Court transcripts, cost of copying at seventy five cents ($.75) per page and one dollar ($1.00) per page for facsimile transmissions, excess postage, including certified mailing fees and parking fees), which are incurred on your behalf.  I also wish to confirm with you that I will forward to you a professional statement for services limiting each bill to $1,000.00 per month (balance forward will be paid in full at the end of all services) from the sale of the businesses and/or capital raised for funding of additional restaurants rendered with respect to this matter until this case has been resolved.

You further understand that the hourly rates apply to all time expended relative to your matter, including, but not limited to, office meeting and conferences, telephone calls and conferences, either placed by or placed to you, or otherwise made or had on the your behalf or related to your matter; preparation, review and revision of correspondence, documents, motions, disclosure demands and responses, affidavits and affirmations, or any other documents, memoranda or papers relative to your matter, legal research, travel time, and any other time expended on your behalf in connection with your matter.

You have the absolute right to cancel this Retainer Agreement at any time.  Should you exercise this right, you will be charged only the fee expenses (time charges and disbursements) incurred within that period, and the fair and reasonable fee would be determined in accordance with legally accepted standards, with the unearned balance of the retainer fee, if any, being promptly refunded to you. Presently, the legally recognized elements of a reasonable fee, as set forth in the Code of Professional Responsibility, are as follows:

1   The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal services properly.

2   The likelihood, if apparent or made known to you, that the acceptance of the particular employment will preclude other employment by the lawyer.  (You should know that this law firm, by accepting retention as you attorneys, is clearly precluded from representing the opposing party against you.)

3   The fee customarily charged in the locality for similar legal services.

4   The amount involved and the results obtain.

5   The time limitations imposed by you or by circumstances.

6   The nature and length of the professional relationship with you.

7   The experience, reputation and ability of the attorney or attorneys performing the services.

You agree to pay us such additional fees and to reimburse us for our advances on your behalf that may be due from time to time not

later than twenty (20) days from the date that we shall submit a bill to you for same.  If an amount due to us is not paid within (20) days after our statement to you of the amount due, interest at the rate of nine (9%) percent per annum (or interest at the prevailing statutory rate as set forth in the Civil Practice Law and Rules) shall be added to the balance due to us.

You will be billed periodically, generally each month, but in no event less frequently than every sixty (60) days.  Included in the billing will be a detailed explanation of the services rendered, by whom rendered, and the disbursements incurred by our firm in connection with your matter.

Upon receipt of our bill, you are expected to review the bill and promptly bring to our attention any objections you may have to the bill.  While we strive to keep perfectly accurate time records, we recognize the possibility of human error, and we shall discuss with you any objections you raise our bill.  You will not be charged for time expended in discussing with us any aspect of the bill rendered to you.

You agree to pay for the services of the law firm in accordance with the following schedule of hourly rates:

1   Partners: ..............................................$350.00
2   Associate Attorneys:.............................$275.00
3   Law Clerks/Paralegals: .........................$150.00

In addition to the foregoing, your responsibility will include direct payment or reimbursement to this firm for disbursements advanced on your behalf, the same to include, but not necessarily be limited to, Court filing fees, recording fees, charges of process servers, travel expenses, extraordinary copying costs, messenger services, necessary secretarial overtime, transcripts and the customary fees of stenographers referable to examinations before trial in the event such examinations are utilized.  It is specifically understood and agreed that such payment shall be made by you directly to the stenographer prior to commencing such examinations, and the same shall apply to all Court filing fees.

You understand that not one particular member of this firm is being retained but, rather that this law firm, as an entity, is undertaking legal representation of you pursuant to this Retainer Agreement and that this firm reserves the right to assign and delegate all aspects of such representation as the firm, in its sole discretion, deems appropriate.

Such assignment and delegation may include, but is not limited to, preparation of pleadings, motions, disclosure demands and responses, settlement negotiations, preparations of agreements, preparation and conduct of examinations before trial, Court appearances, trial work, and any other matter deemed by this firm to be appropriately delegated.

Likewise, law clerks and paralegal are often called upon to assist in document production, file organization, preparation and review of financial statement and data, and such other duties as are assigned by this firm. We acknowledge an obligation to provide you with copies of correspondence and legal documents relating to your matter and will keep you apprised of its status.

You have been advised that in order for us to properly protect your interests, it may be necessary to retain outside experts such as appraisers and accountants.  You will be responsible for the costs incurred for any such service, which in some cases may have to be paid in advance, depending upon the requirements of the particular expert.  No expert or appraiser shall be retained without your prior approval.

You acknowledge that you have read this Retainer Agreement in its entirety, have had full opportunity to consider its terms, have had full and satisfactory explanation of same, and fully understand and agree to such terms. You fully understand and acknowledge that there are no additional or different terms or agreements other than those expressly set forth in this written Retainer Agreement.

We have informed you that pursuant to Court rule, we are required, as your attorneys at times, may need to certify Court papers submitted by you, which contain statements of fact, and specifically to certify that we have no knowledge that the substance of the submission is false.  Accordingly, you agree to provide us with complete and accurate information, which forms the basis of Court paper and to certify, in writing, to us, prior to the time the papers are actually submitted to Court, the accuracy of the Court submissions which we prepare on your behalf, and which you shall review and sign.

You are aware of the hazards of litigation and acknowledge that we have made no guarantees in the disposition of any phase of the matter for which you have retained this firm.   If this fee arrangement meets with your approval, kindly sign your name where indicated below.

We look forward to being of service to you in connection with this matter.

Very truly yours,

Alfred DiGirolomo, Jr.
DiGirolomo & DiGirolomo, P.C.

**I HAVE READ ANY UNDERSTAND THE ABOVE RETAINER AGREEMENT, HAVE RECEIVED A COPY OF SAME AND ACCEPT ALL OF ITS TERMS.**

Dated:  February 15, 2008

Joseph DiGirolomo

THIS SHALL CONSTITUTE A RETAINER AGREEMENT FOR LEGAL SERVICES BY AND BETWEEN:

**DiGirolomo & DiGirolomo, P.C.**, 595 Stewart Avenue, Suite 510, Garden City, New York 11530 and

**JJM-63 Corp., RJLL Corp., and DDOB, Corp. each d/b/a CIAO BABY,** President, Leonard Oliva

**THIS SHALL CONSTITUTE A LEGALLY BINDING CONTRACT AND SHOULD BE CAREFULLY REVIEWED.**

---

Dear Mr. Leonard Oliva:

This writing confirms that you have retained this firm to act as your attorneys both as corporate counsel and to represent you personally in all matters in any legal proceeding either as defense counsel or to prosecute any matter presented to this office.

It is further understood that:

> The retainer fee set forth below does not include any services rendered in Appellate Courts or any actions or proceedings other than the matter for which this office has been retained.

> You authorize this firm to take any steps, which, in the sole discretion of the firm, are deemed necessary or appropriate to protect your interest in the matter.

> I have agreed to represent you and you have paid me a $1,000.00 retainer. The amount of our eventual fee is to be based upon our regular schedule of established hourly time charges, along with any out-of-pocket disbursements (such as Court costs, messenger services, transcripts of proceedings, process server fees, deposition and Court transcripts, cost of copying at seventy five cents ($.75) per page and one dollar ($1.00) per page for facsimile transmissions, excess postage, including certified mailing fees and parking fees), which are incurred on your behalf. I also wish to confirm with you that I will bi-monthly forward to you a professional statement for services rendered with respect to this matter until this case has been resolved.

> You further understand that the hourly rates apply to all time expended relative to your matter, including, but not limited to,

office meeting and conferences, telephone calls and conferences, either placed by or placed to you, or otherwise made or had on the your behalf or related to your matter; preparation, review and revision of correspondence, documents, motions, disclosure demands and responses, affidavits and affirmations, or any other documents, memoranda or papers relative to your matter, legal research, travel time, and any other time expended on your behalf in connection with your matter.

You have the absolute right to cancel this Retainer Agreement at any time. Should you exercise this right, you will be charged only the fee expenses (time charges and disbursements) incurred within that period, and the fair and reasonable fee would be determined in accordance with legally accepted standards, with the unearned balance of the retainer fee, if any, being promptly refunded to you. Presently, the legally recognized elements of a reasonable fee, as set forth in the Code of Professional Responsibility, are as follows:

1   The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal services properly.

2   The likelihood, if apparent or made known to you, that the acceptance of the particular employment will preclude other employment by the lawyer. (You should know that this law firm, by accepting retention as you attorneys, is clearly precluded from representing the opposing party against you.)

3   The fee customarily charged in the locality for similar legal services.

4   The amount involved and the results obtain.

5   The time limitations imposed by you or by circumstances.

6   The nature and length of the professional relationship with you.

7   The experience, reputation and ability of the attorney or attorneys performing the services.

You agree to pay us such additional fees and to reimburse us for our advances on your behalf that may be due from time to time not later than twenty (20) days from the date that we shall submit a bill to you for same. If an amount due to us is not paid within (20) days after our statement to you of the amount due, interest at the

rate of nine (9%) percent per annum (or interest at the prevailing statutory rate as set forth in the Civil Practice Law and Rules) shall be added to the balance due to us.

You will be billed periodically, generally each month, but in no event less frequently than every sixty (60) days. Included in the billing will be a detailed explanation of the services rendered, by whom rendered, and the disbursements incurred by our firm in connection with your matter.

Upon receipt of our bill, you are expected to review the bill and promptly bring to our attention any objections you may have to the bill. While we strive to keep perfectly accurate time records, we recognize the possibility of human error, and we shall discuss with you any objections you raise our bill. You will not be charged for time expended in discussing with us any aspect of the bill rendered to you.

You agree to pay for the services of the law firm in accordance with the following schedule of hourly rates:

1  Partners: ...........................................$350.00
2  Associate Attorneys:...........................$275.00
3  Law Clerks/Paralegals: .......................$150.00

In addition to the foregoing, your responsibility will include direct payment or reimbursement to this firm for disbursements advanced on your behalf, the same to include, but not necessarily be limited to, Court filing fees, recording fees, charges of process servers, travel expenses, extraordinary copying costs, messenger services, necessary secretarial overtime, transcripts and the customary fees of stenographers referable to examinations before trial in the event such examinations are utilized. It is specifically understood and agreed that such payment shall be made by you directly to the stenographer prior to commencing such examinations, and the same shall apply to all Court filing fees.

You understand that not one particular member of this firm is being retained but, rather that this law firm, as an entity, is undertaking legal representation of you pursuant to this Retainer Agreement and that this firm reserves the right to assign and delegate all aspects of such representation as the firm, in its sole discretion, deems appropriate.

Such assignment and delegation may include, but is not limited to, preparation of pleadings, motions, disclosure demands and responses, settlement negotiations, preparations of agreements,

preparation and conduct of examinations before trial, Court appearances, trial work, and any other matter deemed by this firm to be appropriately delegated.

Likewise, law clerks and paralegal are often called upon to assist in document production, file organization, preparation and review of financial statement and data, and such other duties as are assigned by this firm.

We acknowledge an obligation to provide you with copies of correspondence and legal documents relating to your matter and will keep you apprised of its status.

You have been advised that in order for us to properly protect your interests, it may be necessary to retain outside experts such as appraisers and accountants. You will be responsible for the costs incurred for any such service, which in some cases may have to be paid in advance, depending upon the requirements of the particular expert. No expert or appraiser shall be retained without your prior approval.

You acknowledge that you have read this Retainer Agreement in its entirety, have had full opportunity to consider its terms, have had full and satisfactory explanation of same, and fully understand and agree to such terms.

You fully understand and acknowledge that there are no additional or different terms or agreements other than those expressly set forth in this written Retainer Agreement.

We have informed you that pursuant to Court rule, we are required, as your attorneys at times, may need to certify Court papers submitted by you, which contain statements of fact, and specifically to certify that we have no knowledge that the substance of the submission is false. Accordingly, you agree to provide us with complete and accurate information, which forms the basis of Court paper and to certify, in writing, to us, prior to the time the papers are actually submitted to Court, the accuracy of the Court submissions which we prepare on your behalf, and which you shall review and sign.

You are aware of the hazards of litigation and acknowledge that we have made no guarantees in the disposition of any phase of the matter for which you have retained this firm. If this fee arrangement meets with your approval, kindly sign your name where indicated below.

We look forward to being of service to you in connection with this matter.

Very truly yours,

Alfred DiGirolomo, Jr.
DiGirolomo & DiGirolomo, P.C.

**I HAVE READ ANY UNDERSTAND THE ABOVE RETAINER AGREEMENT, HAVE RECEIVED A COPY OF SAME AND ACCEPT ALL OF ITS TERMS**.

Dated:  February 15, 2008

Leonard Oliva

## *INDIVIDUAL VERIFICATION*

STATE OF NEW YORK   )
                    )        ss.:
COUNTY OF NASSAU    )


I, ALFRED DIGIROLOMO JR. THE PLAINTIFF HEREIN, HAS READ THE WITHIN ***COMPLAINT*** AND KNOWS THE STATEMENTS CONTAINED THEREIN TO BE TRUE TO THE BEST OF KNOWLEDGE WITH THE EXCEPTION OF THOSE MATTERS THEREIN STATED TO BE ALLEGED UPON INFORMATION AND BELIEF, AND AS TO THOSE MATTERS I BELIEVE THEM TO BE TRUE.


_____
ALFRED DIGIROLOMO, JR.


Sworn and subscribed to
before me on this _____ day
of September, 2020.


_____
NOTARY PUBLIC

Docket No.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT: NEW YORK

DIGIROLOMO & DIGIROLOMO, P.C. DIGIROLOMO & ASSOCIATES, P.C.
And ALFRED DIGIROLOMO JR., both individually and professionally,

Plaintiff(s),

-against-

LEONARD OLIVA, ELVA OLIVA, TWENTY-SEVEN RESTAURANT, LLC,
RONALD DIGIROLOMO, JOSEPH DIGIROLOMO, LARRY BLUMSTEIN,
JEFFREY B. HULSE, ESQ. VICTOR MEVORAH, ESQ., JOHN DOE, JANE
DOE and XYZ CORPORATION, the last three defendants being fictitious, the true
names and capacities whether individual, corporate, associate, or otherwise being
unknown to the plaintiffs,

Defendant(s).

# COMPLAINT

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of
New York, certifies that, upon information and belief and reasonable inquiry, the contentions
contained in the annexed document are not frivolous.*

*Dated:  September 20, 2020*
     *Garden City, New York*

_____

.

102 Castle Ridge Road
Manhasset, New York 11030
Phone (516) 297-1158

# DIGIROLOMO & ASSOCIATES, P.C.

### Attorneys and Counselors At Law

Paralegal: Somer Elemam

666 Old Country Rd.
Suite 412
Garden City, NY 11530
Tel. (516) 396-0354
Fax. (516) 279-6154

January 25, 2017

**Dear Mr. Oliva:**

I recently learned that you, personally and individually, have initiated some alleged criminal investigation into the Bank of Smithtown matters now pending in a court of law. At the behest of the majority members, you are directed to immediately cease and desist what you think you are doing in complete disregard for what the majority members of both LLC's agreed to in writing with this firm. Let me be clear, in the pursuit of preserving corporate monies, specific legal strategies discussed and agreed to were implemented by this firm at the behest of the *majority members*. Your break-up with the majority members two years and continuing *combined with your personal problems or your personal desires to secure loans are inferring with* corporate decisions and in complete disregard for your fiduciary obligations to the corporations. Should you as a minority member disclose or disseminate personally any information that jeopardizes the corporate legal strategies being pursued by this firm, an Order to Show Cause and subsequent litigation will be instituted that will include a demand for all books and records and a full accounting of ALL proceeds you received from the sale of both businesses.

If you are not personally involved in the aforementioned then allow this letter to act also as an apology; however, if you are, kindly direct whomever you spoke with at any law enforcement agency to contact this firm. If you would like to understand the corporate strategies kindly contact my office to schedule an appointment and discuss it in a confidential setting. Thank you for your courtesy and cooperation herein. I remain,

Very truly yours,

Alfred DiGirolomo Jr., Esq.
AD/se